## HOOD *v.* LEGG *et al.; et vice versa.*

1. In every case it is for the court to determine whether, under its particular facts and circumstances, the restraint imposed by an agreement is reasonable. It was error for the court to resubmit this question to the auditor for a finding of fact thereon.

2. The auditor properly found as a matter of law "that the territorial limits named in the contract within which defendants agree not to enter the business of manufacturing and selling brick are reasonable." It was error for the court to sustain an exception to this finding of the auditor.

3. The above rulings are controlling in the case on the part of plaintiff in error in the main bill of exceptions. Other assignments of error in the main bill of exceptions, which have reference to the admission and rejection of evidence, need not be decided, because a decision on these questions would not affect the result.

4. The contract between the parties purported to restrict the covenantors, not only from manufacturing and selling brick within the stipulated territory, but also from manufacturing and selling "other clay products." The auditor found that the contract "with reference to other clay products" was unreasonable and invalid. No exception was filed to this finding. The defendant in error in the cross-bill of exceptions contends that the contract is indivisible, and that since this portion is invalid the whole contract falls. *Held,* that the contract is divisible, and the finding that the portion with "reference to other clay products" is unenforceable does not affect the validity of the contract with reference to the manufacture and sale of brick.

5. None of the assignments of error in the cross-bill of exceptions are meritorious. All of the issues therein were decided adversely when

the case was formerly before this court on a writ of error to the grant of an interlocutory injunction, or the same are controlled adversely by the rulings above announced.

Nos. 4493, 4526. APRIL 15, 1925. REHEARING DENIED JULY 18, 1925.

Equitable petition. Before Judge Tarver. Gordon superior court. June 28, 1924.

The case was previously here. *Legg* v. *Hood,* 154 *Ga.* 28 (113 S. E. 642). The petition filed by B. M. Hood alleges: On Oct. 26, 1918, J. H. Legg and L. N. Legg made a written agreement to sell to J. M. Stoner all the capital stock of Legg Brick Company, two hundred and fifty shares of the par value of one hundred dollars per share, said agreement containing the following language: "It is further agreed and understood that both J. H. Legg and L. N. Legg will enter into an agreement binding themselves not to become interested in the manufacture or sale of brick or clay products in a radius of three hundred miles from the location of said plant, for a period of ten years." On November 8, 1918, the parties to the agreement above mentioned entered into a contract containing, among other things, the following language: "The first parties [J. H. and L. N. Legg] hereby agree that they will not engage in the business of manufacturing or selling brick, or clay products of any kind, within the radius of three hundred miles from Calhoun, Georgia, for a period of ten years from this date, either as manufacturers, dealers, salesmen, stockholders, partners, or employees. The first parties to have the privilege of constructing kilns, buildings, or anything else with brick at any time or place, or of repairing kilns and machinery." Stoner for a valuable consideration assigned to Hood all his right, title, and interest in and to said contract of Nov. 8, 1918, and the 250 shares of capital stock of Legg Brick Co., and at the time of filing the petition Hood owned 98 of these shares.

The petition was brought originally against J. H. Legg, L. N. Legg, H. L. B. Legg, E. D. Legg, and Plainville Brick Company, a partnership composed of the individuals named. By amendment Plainville Brick Company, a corporation, was made a defendant. It was alleged, that prior to Nov. 8, 1918, Legg Brick Co. was operated by J. H. Legg and L. N. Legg; that in violation of the terms of said contract they had organized a partnership known as Plainville Brick Co., and were constructing at Plainville, about

twelve miles from Calhoun, a plant for the purpose of manufacturing and selling brick, and were publicly claiming that their agreement above recited was invalid, not binding upon them, and that they would not abide the same; that the use of the names of the partnership Plainville Brick Co., H. L. B. Legg, and E. D. Legg is simply a blind and for the purpose of affording a basis for the claim by J. H. and L. N. Legg that they were not and did not purpose to directly engage in the manufacture and sale of brick. (Here it should be stated that J. H. Legg is the father of L. N. Legg and H. L. B. Legg, and that E. D. Legg is the daughter of L. N. Legg.) The amendment further sets up that Plainville Brick Company, a corporation, was organized for the purpose of acquiring title to the plant which petitioner alleged was being constructed by the partnership mentioned; that its incorporators, at the time of organization, knew of the existence of the contract between J. H. and L. N. Legg and J. M. Stoner; that H. L. B. Legg and Miss E. D. Legg are both directors in the corporation, the latter being also secretary; that said corporation was organized and was being operated through its officers and directors by L. N. Legg for the purpose of enabling him to evade the terms of the contract with Stoner, and the use of said corporation is for the purpose of affording a basis for the claim that neither he nor J. H. Legg are directly engaged and do not propose to engage in the manufacture and sale of brick; that J. H. Legg and L. N. Legg have furnished to the partnership money and capital for the ultimate purpose of acquiring and operating said brick plant; that petitioner has no adequate remedy at law for the violation of said contract, and that he will suffer irreparable damage if the defendants are permitted to breach the contract in the manner stated. The prayers are, that the defendants be restrained by injunction from engaging in the manufacture and sale of brick or clay products within the radius named, from proceeding further with the construction of a brick plant within the radius named, and from hiring or attempting to hire the employees of Legg Brick Company. The court below granted a temporary injunction as prayed. When the case was here previously that judgment, in so far as it restrained the construction of the plant at Plainville, was reversed. Both parties are now excepting.

The main bill of exceptions sued out by Hood, the plaintiff,

recites that on March 5, 1923, the cause was referred, by the court below, to an auditor with power and authority to determine all issues of law and fact, and to allow or disallow amendments to proceedings; and that subsequently the auditor made seven findings of fact and six findings of law, the first finding of law being: "1st. That the territorial limits named in the contract, within which defendants agree not to enter the business of manufacturing and selling brick, are reasonable." The defendants moved to recommit the case to the auditor, for the reason, among others, that inasmuch as said restrictive covenant of the contract was attacked by defendants as being unreasonable, null and void, on the grounds that it imposed an unreasonable restraint upon J. H. Legg and L. N. Legg as to time, territory, and commodities, and that such restraint was not necessary or reasonable for the protection of the purchaser in the thing sold, and inasmuch as a great deal of evidence was introduced on this question, and inasmuch as the issue thus raised was a question of fact to be determined by the auditor as a matter of fact, the auditor should have made a finding of fact on the question of the reasonableness or unreasonableness of the restriction made in said contract, instead of merely making a finding of law on such issue. The cause was recommitted to the auditor with instruction to make a finding of fact upon this question.

The assignments of error in the main bill are that the court erred: (1) in recommitting the cause to the auditor, because the question as to whether or not the contract is valid and reasonable as to territorial limitation, or otherwise, was a question of law for the court, and was correctly decided by the auditor as a matter of law and not as a matter of fact; (2) in sustaining seven exceptions of law made by the defendants to the report of the auditor; (3) in overruling and disallowing sixteen exceptions made by the plaintiff upon the findings of the auditor; (4) in submitting to a jury the question whether the provision of the contract against the defendants engaging in the brick business within three hundred miles of Calhoun, Georgia, was, as found by the auditor, a reasonable limitation and reasonably necessary to protect the Legg Brick Company against competition by the defendants in the territory in which the sales of Legg Brick Company were made, and, the jury having returned a verdict finding in favor of the

exception made by the defendants upon this point, in rendering a decree denying to the plaintiff the relief prayed for, and declaring said restrictive covenant to be null and void and of no effect, with judgment against the plaintiff for costs in the case, the plaintiff contending that the reasonableness or unreasonableness of the contract and said covenant is a question to be determined by the court and not by the jury; and (5) in overruling the motion for new trial filed by the plaintiff. The first four assignments of error are based upon exceptions filed pendente lite by the plaintiff. The grounds of the motion for new trial complain that the court erred in rejecting certain evidence, and in certain portions of his charge to the jury.

*Bryan & Middlebrooks, F. A. Cantrell,* and *A. L. Henson,* for plaintiff.

*Maddox, Matthews & Owens, M. B. Eubanks,* and *J. G. B. Erwin,* for defendants.

GILBERT, J. 1. The issue as to whether the covenant is reasonable was properly considered by the auditor as a question of law, and he properly made a finding of law on that question. It was error for the court to rerefer that issue to the auditor with the direction to make a finding of fact; and the court also erred, after the auditor had filed his finding of fact on that question, in submitting such finding to the jury for determination. From the earliest times in England down to the present time in this country, courts have uniformly ruled that the reasonableness of such a covenant is a question for the court to determine, and not for the jury. Where there has been a breach of such a covenant and the suit is for damages by reason of the breach, this presents an issue of fact which must be submitted to a jury. In Dowden *v.* Pook, 1 K. B. 45, at page 50, the Master of the Rolls, discussing the question whether the jury could decide the reasonableness of such a covenant, said: "It appears to me that from a very early stage down to the present time that question has really always been treated as being one for the court, and not for the jury. It is in my opinion a question of law. No doubt there may be matters of fact forming elements in the determination of the question which, if they are in dispute, may have to be ascertained through the medium of a jury; but it is beyond their province to determine whether the restriction imposed is reasonable or not." In Mallan

*v.* May, 11 Mees. & W. (Reports of the Courts of Exchequer) 652, which was a case involving a contract in partial restraint of trade, it was said: "This is clearly a question of law, and was decided as such in Davis *v.* Mason, 5 T. R. 118; Horner *v.* Graves, 7 Bing. 735; Proctor *v.* Sargent, 7 M. & G. 25; and Chesman *v.* Nainby, 2 Stra. 739, 2 Ld. Raym. 1456." Tallis *v.* Tallis, 1 E. & B. 391. In *Rakestraw* v. *Lanier,* 104 *Ga.* 188, 194 (30 S. E. 735, 69 Am. St. R. 154), dealing with a similar contract, this court said: "And the question of reasonableness of the restriction is one of law for the court. 1 Wharton on Contracts, § 433; Bishop on Contracts, § 517; Pomeroy's Eq. Jur. (4th ed.) § 934; Mallan *v.* May, 11 Mees. & W. 653; Wiley *v.* Baumgardner, 97 Ind. 66." In *Bullock* v. *Johnson,* 110 *Ga.* 486, at p. 493 (35 S. E. 703), this court said: "Of course, in every case, it is for the court to determine, whether, under its particular facts and circumstances, the restraint imposed by the agreement is reasonable." In *Smith* v. *DuBose,* 78 *Ga.* 413, 440 (3 S. E. 309, 6 Am. St. R. 260), it was said: "As to what constitutes public policy, and as to what contravenes it, is not a question of fact for the jury, but is a question of law to be determined by the court. Any other rule than this would lead to confusion and injustice, and, instead of settling, would go far to unsettle the law upon this subject." See also Kellogg *v.* Larkin, 3 Pinn. (Wis.) 123 (56 Am. D. 164, 167); Williston on Contracts, § 1636; Linn *v.* Sigsbee, 67 Ill. 75; Bancroft *v.* Union Embossing Co., 72 N. H. 402 (57 Atl. 101, 64 L. R. A. 298); Rosenbaum *v.* United States Credit System, 65 N. J. L. 255 (48 Atl. 237, 53 L. R. A. 449).

In Tarr *v.* Stearman, 264 Ill. 110 (5) (105 N. E. 957), it was ruled: "Whether a contract in restraint of trade is reasonable or contrary to public policy, and whether there is an adequate consideration to support it, are questions for the court." In Pierce *v.* Randolph, 12 Texas, 290, it was held: "It was error to submit to the jury the question whether a contract is contrary to public policy; that is a question of law for the courts to decide." The question in the last-cited case was as to the validity of a note "put up as a forfeit in case of failure to run a horse-race." Error was assigned on the charge of the court to the effect "that if the jury believed that the note was given as a forfeit on the running of a horse-race and that such races are immoral in their tendency and

tend to breaches of the peace, then the note is based on an illegal consideration, and the plaintiffs are not entitled to recover." The contention was that the validity of the note was a question of law. Chief Justice Hemphill, ruling upon the question, said: "But it seems a new rule has been discovered, by which to test the validity of contracts, and that is, the belief of the jury with regard to their tendency to immorality and breaches of the peace, and this even where such contracts have been declared by the courts of last resort to be valid in law, and to have all the force and efficacy which the law can impart to any contract. No doctrine more subversive of law and of private and public rights could have been devised. In fact it sets them afloat upon public sentiment, to fluctuate and rise and fall with the ebbs and flows of popular opinion, and, when brought to trial, to succeed or fail, not according to established rules of law, but upon the belief, the private opinions, or in other words the whims and caprices of the jury before whom they are presented. The most sacred rights, those most cherished by the law, may be. frustrated and defeated, if without any regard to the law a justice of the peace, with his jury, might deem them against morals, good order or public policy." "Though in the construction of a contract it is necessary to receive evidence as to the situation of the parties at the time of its execution, to enable the court to determine the intent of the parties, the question of construction is not transferred from the court to the jury, but continues to be one of law for the court." Cohen v. Berlin & Jones Envelope Co., 166 N. Y. 292 (59 N. E. 906).

"Whether an agreement is in restraint of trade is a question for the court." Knight v. Jillson, 172 Ind. 27 (87 N. E. 823). However, the Civil Code (1910), § 5422, provides: In an equitable cause, "when any question of fact is involved, the same shall be decided by a jury." This is an equitable cause. It is in no sense a suit at law. Though an alleged breach of contract forms the basis of the suit, injunction, and not damages, is sought. It is elementary that it is the province of the court to construe all contracts, where no question of ambiguity is involved. This contract is plain, explicit, and unambiguous. The contrary is not suggested. The restrictive covenant is ancillary to the contract of sale. The defendants admit the execution of the covenant, but deny its

validity. They insist that is is void and unenforceable, because in its territorial limitation it is unreasonable. The brick plant of which complaint is made in the plaintiff's petition has been constructed within twelve miles of the point intended to be protected by the contract. What facts are involved? Only those relevant to the decision by the court, as to the intention of the parties, nature of the business, and surrounding circumstances. All of these were without conflict, as will be shown infra. There was no cause for the intervention of a jury. For the reasons stated the court erred in rereferring the question of reasonableness of the contract to the auditor, with direction to him to make a finding of fact thereon. Likewise the submission of the question as an issue of fact to the jury was error. A fortiori the verdict of the jury was nugatory.

2. The auditor found as a matter of law that the contract in respect to territorial limitation was reasonable. This is the controlling question in the case. When the case was before us on the former occasion it was held that the contract was not void on the ground that it was in restraint of trade and contrary to public policy, "if such covenant is reasonable," and the issue before the court when the case was returned for final trial was whether the contract was reasonable. The contract in fact provided a time limitation. Where such a contract is limited as to place, and reasonable in other respects, it is valid although unlimited as to time. *Goodman* v. *Henderson, 58 Ga.* 567, 569; *Swanson* v. *Kirby, 98 Ga.* 586 (2) (26 S. E. 71). Our Civil Code (1910), § 4253, provides that "a contract which is against the policy of the law can not be enforced; such are . . contracts in general in restraint of trade." Obviously this contract does not fall within the precise terms of that section. It is in partial restraint of trade. Such contracts are not void. They are not against public policy, provided they are reasonable. Such was the decision of this court with regard to this contract, thus fixing the law of the case in this respect. But what is meant by the word "reasonable," and by what standard or standards must it be determined whether the contract is "reasonable?" When we come to analyze that question we find that there is but a single ground upon which such a contract may be held unreasonable. That ground is whether the contract unduly burdens the public interest, and thus at last we find that public

policy is the test. Whether such a contract is reasonable has no reference to the contractual rights of the parties themselves. The contract dealt with a lawful and useful business, and the restriction was partial, a limit as to time and territory being stipulated, and is ancillary to the contract of sale. It has reference only to the interests of the public.

"Public policy requires that every man shall be at liberty to work for himself, and shall not be at liberty to deprive himself or the State of his labor, skill, or talent by any contract that he enters into. On the other hand, public policy requires that when a man has by skill, or by any other means, obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market; and in order to enable him to sell it advantageously in the market, it is necessary that he should be able to preclude himself from entering into competition with the purchaser. In such a case, the same public policy that enables him to do this does not restrain him from alienating that which he wants to alienate, and therefore enables him to enter into any stipulation which, in the judgment of the court, is not unreasonable, having regard to the subject-matter of the contract. There are several reasons for upholding a covenant on the part of the vendor in all such cases to desist from the business in competition with the purchaser, which do not obtain in other cases. In the first place, the restraint is partial in the sense that it covers only the time and locality during and in which the vendee carries on the business purchased, and beyond these limitations the seller is at liberty to carry on the same business. Then, too, the vendor receives an equivalent for his partial abstention from that business, in the increased price paid him for it on account of his covenant; and his entering into and observance of the covenant not only do not tend to his pauperization to the detriment of the public, but on the contrary, by securing to him the full value of his business and its good will, a value which he has an absolute right to secure in this way, the covenant operates to his affirmative pecuniary benefit and against his impoverishment, in that, while being paid for desisting from the particular business in the locality covered by it, he may still enter upon other pursuits of gain in the same locality or upon this one in other localities. Finally, while such covenants preclude the competition of the covenantor, it

is ordinarily neither their purpose nor effect to stifle competition generally in the locality, nor to prevent it at all in a way or to an extent injurious to the public, for the business in the hands of the purchaser is carried on just as it was in the hands of the vendor, the former merely takes the place of the latter, the commodities of the trade are as open to the public as they were before, the same competition exists as existed before, . . the profits of the business go as they did before to swell the sum of public wealth, the public has the same opportunities of purchasing, if it is a mercantile business, and production is not lessened if it is a manufacturing plant." 6 R. C. L. 793, § 197.

This court has dealt with contracts in partial restraint of trade in a number of cases. Among them are the following: *Brewer* v. *Lamar,* 69 *Ga.* 656 (47 Am. R. 766) ; *Rakestraw* v. *Lanier,* 104 *Ga.* 188 (supra) ; *McAuliffe* v. *Vaughan,* 135 *Ga.* 852 (70 S. E. 322, 33 L. R. A. (N. S.) 255, Ann. Cas. 1912A, 290) ; *Kinney* v. *Scarborough,* 138 *Ga.* 77 (74 S. E. 772, 40 L. R. A. (N. S.) 473) ; *Morris-Forrester Oil Co.* v. *Taylor,* 158 *Ga.* 201 (122 S. E. 680). These cases contain able and elaborate discussions of such contracts, which renders it useless to discuss the numerous decisions and citations found in those cases. The utter impossibility of harmonizing the conflicting opinions has already been recognized by this court. The law on this question has undergone constant evolution from the strictest limitations according to the earliest adjudications to the more and more liberal limitations according to modern adjudications. 6 R. C. L. 785, § 190. When the case was formerly before us it was ruled: "Such covenant will be reasonable and proper if it only affords a fair protection to the party in whose favor it is made, and is not injurious to the public. 6 R. C. L. 798, § 200, and cases cited in notes 20 and 1; and where it is of such character, it may extend to all the territory covered by the business the good will of which has been sold." *Legg* v. *Hood,* 154 *Ga.* 28 (supra). The same rule was stated in *Rakestraw* v. *Lanier,* 104 *Ga.* at p. 194 (supra) ; *Shirk* v. *Loftis,* 148 *Ga.* 500, 504 (97 S. E. 66) ; 2 Page on Contracts, 1377, and collection of authorities cited and classified by States. Mr. Page states further that the test is to be applied according to the circumstances of the contract, and is not to be arbitrarily limited by boundaries of time and place; and that where this view is enter-

tained and the extent of the business in question justifies it, a contract which restrains business over the entire area of a country, as Great Britain or the United States or the District of Columbia, or over several States of the Union, or within fifteen hundred miles of a specified city, etc., or without any restriction as to space, is held valid. Id. p. 1384. In Trenton Potteries Co. v. Oliphant, 58 N. J. Eq. 507 (43 Atl. 723, 46 L. R. A. 255, 260, 78 Am. St. R. 612), it is said: "In 1711 [the date of an earlier New Jersey decision] trade was subject to limitations which have largely diminished or ceased to exist. When orders and responses had to be transmitted by mail or messenger, and the mail and travelers were carried by coaches drawn by horses, and goods were transported by pack or wagon, the area of the trade of a manufacturer or tradesman was necessarily limited by those conditions. Now that orders and responses may be transmitted for long distances by telephone, and over the world by telegraph, and goods and travelers may have quick transit over land and sea, the area of such trade may be immensely greater. Thereupon it is contended with great force that the true test of the validity of such contracts in restraint of trade is to be found alone in their being reasonably essential to the protection of the purchaser, and that, considering the vast extent of the area of some trades, there are cases in which a general restraint can not be held to be unreasonable."

In Anchor Electric Co. v. Hawkes, 171 Mass. 101 (50 N. E. 509, 41 L. R. A. 189, 68 Am. St. R. 403), it was said: "The changes in the methods of doing business, and the increased freedom of communication which have come in recent years, have very materially modified the view to be taken of particular contracts in reference to trade. The comparative ease with which one engaged in business can turn his energies to a new occupation if he contracts to give up his old one makes the hardship of such a contract much less for the individual than formerly, and the commercial opportunities which open the markets of the world to the merchants of every country leave little danger to the community from an agreement of an individual to cease to work in a particular field. . . Arbitrary rules which were originally well founded have thus been made to yield to changed conditions, and underlying principles are applied to existing methods of doing business." This rule, however, is broader than the rule adopted in this State.

This court has held that a contract without limitation as to space or territory is unenforceable as being against the policy of the law. *Bonner* v. *Bailey,* 152 *Ga.* 629 (110 S. E. 875) ; *Everett* v. *Boon,* 157 *Ga.* 372 (121 S. E. 240). In other jurisdictions the tendency of the courts appears to be no longer to fix geographical limitations within which contracts of the character in question can be enforced. 6 R. C. L. 797; Swigert *v.* Tilden, 121 Iowa, 650 (97 N. W. 82, 63 L. R. A. 608, 100 Am. St. R. 374) ; Cowen *v.* Fairbrother, 118 N. C. 406 (24 S. E. 212, 32 L. R. A. 829, 54 Am. St. R. 733). In regard to the relaxation of the early English rule Mr. Page says: "The so-called modern rule was laid down under the influence of economic theories which insisted strenuously upon the international character of business manufacturing and commerce. The only interests which were considered were those of an economic character; and it was assumed from an economic standpoint that as long as the business was carried on somewhere, it made no difference whether such business was carried on within the territorial limits of that State or not. It was assumed that the whole world, in any event, would receive its benefits. It will be interesting to note the effect upon this doctrine of recent experience which has demonstrated that military as well as economic considerations must be taken into account." 2 Page on Contracts, § 787. Some courts hold that to be reasonable the territorial limitation must not be greater than the extent of the business when sold, while others hold that such limitation may extend over the area to which the business may afterwards be extended. 13 C. J. 475, 476. The latter rule is deducible from the former rulings of this court, and is sounder and more in accord with business necessities, and the benefits to be derived by the covenantor, as well as covenantee, as viewed in the light of modern business and industrial developments. It comports with the former ruling in the case, in that "it only affords a fair protection to the party in whose favor it is made." It seems fair and just, and also conducive to business integrity, that a person who purchases a business including the good will, with the purpose of extending its scope, "is entitled to contract with his vendors against competition from them within the territory into which he designs to extend it, and that such a contract is not opposed to public policy when the area

which it embraces is not greater than that which the parties may fairly anticipate the extended business will cover."

In considering a covenant such as we now have for consideration, in the case of Hall Mfg. Co. v. Western Steel & Iron Works, 227 Fed. 588 (L. R. A. 1916C, 620, 142 C. C. A. 220), the court said: "In this case, and in all of the kind, two public interests are to be balanced against the one that is opposed to restrictive covenant: Honesty and fidelity among our business men; and the interest of every one, and so of all, in being able to sell on the most advantageous terms whatever property he owns or has produced, whether tangible or intangible. Unless injury to the public manifestly outweighs the public policies of honesty and of freedom of alienation, restrictive covenants should be enforced. . . Freedom of alienation is a byword, if appellee may sell property, retain the proceeds, and then repossess itself of the property with impunity. And what injury to the public was done that preponderates over honesty and freedom of alienation in the other scale?" In the Fleckenstein case, supra, it was said: "It is of public interest that every one may freely acquire and sell and transfer property and property rights. A tradesman, for example, who has engaged in a manufacturing business, and has purchased land, installed a plant, and acquired a trade connection and good will thereby, may sell his property and business, with its good will. It is of public interest that he shall be able to make such a sale at a fair price, and that his purchaser shall be able to obtain by his purchase that which he desired to buy. Obviously, the only practical mode of accomplishing that purpose is by the vendor's contracting for some restraint upon his acts, preventing him from engaging in the same business in competition with that which he has sold. Trenton Potteries Co. v. Oliphant, [supra]. . . As was said by Lord Macnaghten in Nordenfelt v. Maxim Nordenfelt Guns & Ammunition Co., A. C. 573, in speaking of a case like the present, it seems almost absurd to talk of public policy in connection with such a case. It is a public scandal when the law is forced to uphold a dishonest act; and the public suffers no injury in being deprived of the privilege of dealing with a man who is carrying on his business in violation of his solemn engagement not to do so."

In deciding whether such a contract is reasonable the court will look to the whole subject-matter of the contract, the kind and

character of business, its location, the purpose to be accomplished by the restriction, and all circumstances showing the intention of the parties and which must have entered into the making of the contract. This is generally agreed upon by all of the courts. The business, in the present instance, is that of manufacturing brick. The plant is situated, not in a large city affording a sufficient market for the present and future products of the plant, but, as this court must know, it is located where there can be no reasonable prospect of a local market sufficient to maintain such a plant as a going concern. Courts must know what is common knowledge among all men, that bricks are useful commodities of commerce in a very extensive field. The business of manufacturing and selling brick in the construction of buildings and walls of various kinds, to be successful, must command a wide market. Such market, over such a territory, was enjoyed by the brick company before its sale to Hood, in consequence of which Hood paid to the defendants Legg for their 250 shares of stock in the company $80,000. Estimated upon a par value of $100 per share, the price paid by Hood afforded the vendors a very substantial consideration. The territorial market for the products of the brick plant, throughout which the vendors convenanted not to compete, must have exercised a powerful influence upon the mind of the purchaser when the location of the plant and its local market was considered. The purchaser must have known that this territory would profit little if the vendors were permitted to operate a competing plant and continue to sell products of the new plant in competition with the purchaser. It is not to be supposed that Hood, making the purchase, was merely seeking available clay and a physical plant. Materials for building construction, such as brick, marble, lumber, and the like, are now shipped from one end of the country to the other. Face brick manufactured in New England are transported and used in Georgia buildings. Georgia marble is used all over the United States, and perhaps in foreign countries. California red wood is shipped and used on the Atlantic Seaboard. Columbian cedar is used in the construction of buildings throughout the United States, and the oolitic limestone, of which our own capitol is constructed was shipped from the State of Indiana. In the early days of this republic brick were brought here from England.

There was no substantial conflict in the evidence before the

auditor on the question of the reasonableness of the contract properly entering into the decision of that question. As to the nature of the business, the intention of the parties, there was no conflict.. Considering the evidence as to the radius within which the vendors of the plant had sold brick and the territory into which the parties must fairly have anticipated the purchaser would extend his business, the finding of the auditor that the contract was reasonable was demanded by the evidence. Moreover, the covenantors, as shown by the evidence, constructed the brick plant known as the Plainville Brick Company, at Plainville in Gordon County, about 12 miles from the Legg Brick Co., the plant intended to be protected by their restrictive covenant. It would appear, therefore, that it was not so much the effect of the three-hundred-mile radius that the defendants sought to avoid, as it was to avoid in toto their obligation not to compete. For the reasons stated the court erred in not overruling the exception to the finding of the auditor that as a matter of law the contract was reasonable. Under the rulings made by this court when the case was first before us, we are of the opinion that the plaintiff was entitled to a permanent injunction restraining the defendants, J. H. and L. N. Legg, from manufacturing and selling brick in the restricted territory.

4. The remaining headnotes do not require elaboration.

*Judgment on the main bill of exceptions reversed; on the cross-bill affirmed. All the Justices concur.*