Hast, J.
 

 The principal errors complained of by the plaintiff in error in this case are:
 

 1. The trial court erred in submitting the question of reasonableness of the contract to the jury.
 

 2.
 
 Failure of the trial court to charge the jury at the request of the plaintiff that unreasonableness of the contract must be proven by clear and convincing evidence.
 

 3. Giving by the trial court to the jury at the request of the defendant certain requests to charge which were erroneous.
 

 4. Errors contained in the trial court’s general charge to the jury prejudicial to the plaintiff.
 

 The Ohio Co-operative Agricultural Marketing Act, Sections 10186-1 to 10186-30, General Code, under favor of which the plaintiff association is organized and the contract between plaintiff and defendant made, was adopted by the General Assembly of Ohio in 1923. By its terms, Section 10186-26, General Code, it is provided that “No association organized hereunder and complying with the terms hereof shall be deemed a conspiracy or a combination in restraint of trade or an illegal monopoly; or an attempt to lessen competition or to fix prices arbitrarily nor shall the marketing contracts and agreements between the association and its members or any agreements authorized in this act be considered illegal as such or in unlawful restraint of trade or as a part of a conspiracy or combination to accomplish an improper or illegal purpose.”
 

 
 *166
 
 It has been held by this court
 
 (List
 
 v.
 
 Burley
 
 To
 
 bacco Growers’ Co-operative Assn.,
 
 114 Ohio St., 361) that this act constitutes an exception to the Ohio Valentine Anti-Trust Act, that its application to co-operative agricultural marketing associations alone is not an unreasonable or illegal classification, and that unless contracts made under and by virtue of this act are in their restraint of trade unreasonable as to character, scope or operation, they are valid and binding obligations.
 

 Since the validity of such contracts depends upon the commercial and economic situation of the trade to which they apply, it is interesting to note that the milk industry because of its peculiar relationship to the public has received large attention at the hands of fact-finding bodies as to what must be done to insure an adequate and safe supply of this well nigh universal item of human food. The Legislature of the state of New York in 1932 appointed a joint legislative committee to investigate the causes of the decline of the price of milk to producers and the resultant effect of the low prices upon the dairy industry, the future supply of milk as well as the cost of its distribution in that state. This committee after a most complete and exhaustive investigation filed a report in April, 1933, which is most illuminating in facts with reference to the milk trade as it affects the public interest. A summary of this report is to be found in the opinion of the court in the case of
 
 Nebbia
 
 v.
 
 People of State of New York,
 
 291 U. S., 502, 516-518, 78 L. Ed., 940, 54 S. Ct., 505, 89 A. L. R., 1469.
 

 As a result of this investigation the state of New York as well as more than a dozen other states of the Union, including our own state of Ohio, have provided legislation to foster and protect the milk supply of their respective states by the adoption of acts providing for various sorts of milk commissions and milk control bodies having large administrative powers.
 
 *167
 
 This shows the modern trend with reference to the commercial and economic production, supply and distribution of milk as a food product and the extent to which legislation and the right of contract have gone with reference to this commodity, and points the way to greater liberality in the construction of contracts relating to this subject even though they may result in some restraint of trade.
 

 And while the Ohio Milk Marketing Commission Act, Sections 1080-1 to 1080-23, G-eneral Code, effective June 22, 1933, is not retroactive in effect, yet in Section 1080-2 thereof it specifically recognizes the Cooperative Agricultural Marketing Act above mentioned as a part of the public policy of this state, and the act incorporates into the statute law of this state a scheme of milk control, price determination and marketing practices, including a blended or pool price scheme, which are closely similar to those provided for in the contract between the parties to this action, thus reaffirming the public policy of this state as to the validity of contracts of the same character as that which is the subject of consideration in this case. The judgment in the case of
 
 List
 
 v.
 
 Burley Tobacco Growers’ Co-operative Assn.,
 
 114 Ohio St., 361, 151 N. E., 471, is approved and followed.
 

 The first assignment of error in the case at bar is that the trial court submitted to the jury the bald question as to whether the contract between plaintiff and defendant constituted an unreasonable restraint of trade. Plaintiff claims that this was a question for the court, and that the court should have interpreted and construed the contract and should have advised the jury as to whether or not it was illegal and void as claimed by the defendant. The trial court, on motion for new trial, took the position that while the court should determine the question as to whether a contract is void as against public policy, where the facts are qndisputed, yet since in this case there was
 
 *168
 
 some issue to the effect that the defendant withdrew from the contract as soon as he discovered its purpose was to prevent free and unrestricted competition, the court was justified in submitting to the jury the issue as to whether or not under all the facts and circumstances the contract sued upon was reasonable in its restraint of trade. This court is unable to follow the reasoning of the trial court on this question.
 

 The court in giving defendant’s second and fifth requests to charge said to the jury that if it found that the contract contained provisions which by their terms unreasonably restricted the trade incident to the milk business, then the contract would be illegal and void; and again, in the court’s general charge to the jury, he said that before the defendant may prevail on this issue he must prove that the contract in its operation was unreasonable; that so far as the court and counsel knew, this was the first time that the issue as to the reasonableness of the restraint which this contract imposes had ever been submitted to a jury; and finally the court instructed the jury to take all the facts of thé case into consideration and then determine if this scheme is reasonable in its restraint of trade, and that if the jury finds it unreasonable by the preponderance of the evidence the defendant is entitled to a verdict.
 

 Ordinarily the question as to whether a covenant in a contract in restraint of trade, under the circumstances and as to the subject matter to which it relates is reasonable, is a question of law for the court, and not for the jury. As disclosed by the pleadings, there was no dispute in this case as to the terms of the contract itself. The only disputed questions of fact related to incidental matters growing out of the operation and enforcement of the contract. If the facts are in dispute, the question of the reasonableness or unreasonableness of anything is a mixed question of law and fact; but if the facts are clear and undisputed, it is clearly a question of law.
 
 Kroll
 
 v.
 
 Close, Admr.,
 
 82
 
 *169
 
 Ohio St., 190, 92 N. E., 29, 28 L. R. A. (N. S.), 571. And although a contract sued on is ambiguous and uncertain, and requires parol evidence of extrinsic facts and circumstances to ascertain its meaning, the court must construe it, and it is error to submit its construction to the jury.
 
 Monnett
 
 v.
 
 Monnett, Admr.,
 
 46 Ohio St.,
 
 30, 17 N.
 
 E., 659;
 
 Cohen
 
 v.
 
 Berlin & Jones Envelope Co.,
 
 166 N. Y., 292;
 
 Pierce
 
 v.
 
 Randolph,
 
 12 Tex., 290;
 
 Tarr
 
 v.
 
 Stearman,
 
 264 Ill., 110, 105 N. E., 957;
 
 Hood
 
 v.
 
 Legg,
 
 160 Ga., 620, 128 S. E., 891.
 

 The leading case cited by the defendant on this point is that of
 
 Mulligan
 
 v.
 
 Smith,
 
 32 Colo., 404, 76 P., 1063, which holds (paragraph ten of the syllabus) that “Where an agreement is reduced to writing and there is no dispute as to what this agreement is, it is the duty of the court to determine as a matter of law whether such agreement contravenes public policy or not; but where the terms and conditions of such agreement are in dispute, to be determined upon conflicting evidence, it is the duty of the court to direct the jury what facts material to the defense on the subject would constitute a contract void as against public policy, and that, if they found such facts true, no action could be maintained thereon.”
 

 It will be noted that the court in the case just cited did not leave the ultimate question of the validity of the contract in question to the jury without instructions as to what facts would constitute invalidity, but advised them what facts were necessary for such purpose and then instructed them that if they found such facts they were permitted to make the deduction of invalidity. Even this was not done by the court in the ease at bar. The rule that the court should construe the contract and determine its validity is a salutary one, because if the validity of the same form of contract were left to juries in different actions contrary results would almost certainly follow, resulting in confusion rather than certainty of legal determination.
 
 *170
 
 The record shows that there are many contracts of similar form now in existence affecting the milk trade of this state, and if other cases shall arise ont of identical facts, different juries will undoubtedly arrive at different conclusions, resulting in a chaotic situation of identical cases being decided, some in favor of the association and some in.favor of the milk dealers, with some dealers obligated by judgment to fulfil their contractual obligations to the associations and others freed from the same.
 

 It is suggested by the defendant that even if the court did err in the first instance in submitting the question of the reasonableness of the contract to the jury, this error was cured by the action of the trial court in overruling the motion for new trial on the weight of the evidence. This court cannot follow this suggestion. It would tend to upset the orderly procedure of trials and would permit the trial court in many instances to cure errors which it had made in the course of a trial and which are complained of in the motion for new trial, leaving the aggrieved party without any proper remedy. We think the court erred in submitting broadly the issue of the reasonableness of this contract to the jury.
 

 The next assignment of error is that the court failed to charge the jury at the request of the plaintiff that the alleged unreasonableness of the contract must be proven by clear and convincing evidence. The plaintiff claims this degree of proof is necessary rather than proof by a mere preponderance of the evidence for the reason that the legislative authority of the state has indicated in the Co-operative Agricultural Marketing Act that the policy of the state is to favor such an association which the Legislature believes to be necessary for the proper conduct of certain lines of business of which the milk business is one; and that the policy of the Legislature should be upheld unless it is very plainly shown that the contract in question
 
 *171
 
 is unreasonable in its restraint of trade. In civil cases clear and convincing evidence is defined as the highest degree of proof available and such definition has been applied where the charge of fraud is involved; in proving the existence of a lost or spoliated will; in proving an agreement to bequeath by will; in establishing mutual mistake sufficient to justify reformation of an instrument; in engrafting trusts; in establishing an estoppel; in establishing an equitable mortgage out of a deed absolute on its face; in establishing a contract to pay for services rendered by one member of a family to another member of the same family since deceased, as distinguished from a similar action wherein the party in whose behalf the services were rendered defends in person — eases where great injustice might easily be done unless the claimant’s proof is clear and convincing. The rule should never be applied in the ordinary civil action.
 

 This court is of the opinion that a distinction must be drawn between the validity of an enabling legislative act and a contract based upon permission or authority granted thereby when attacked for unreasonableness. In the former case there is an expression of sovereign power followed by the presumption that the legislation is reasonable, whereas in the latter no such presumption prevails, and therefore upon the issue of unreasonableness of the contract in question, the preponderance of the evidence rule must be applied. While the Legislature recognizes the validity of the subject-matter of the contract in question, its unreasonableness, if it is unreasonable, depends upon the acts of the parties in carrying into the contract a variable element as to prices and terms of marketing which make the contract unreasonable. This is a question upon which the usual rule of evidence as to burden of proof prevails.
 

 In the next assignment of error the plaintiff complains of the charge of the court as embodied in de
 
 *172
 
 fendant’s requests to charge, numbers one and two. Number one is to the effect that if the jury find that the contract in question had an inevitable tendency to control prices, so as to create therein a monopoly in the production and distribution of milk to the detriment of the public, regardless of any actual injury to the public, then such contract is in contravention of public policy, illegal and void. Number two is to the effect that if the jury find that the contract contained provisions which by their terms unreasonably restricted the trade incident to the milk business, or that in the operation of the parties under said written instrument the inevitable tendency of such operations was to place an unreasonable restraint upon the trade incident to the milk business, then the contract would be illegal and void.
 

 As already pointed out, this court takes the position that the trial court in these requests to charge improperly left to the jury the question of whether or not the contract between the plaintiff and defendant was in itself unreasonable and therefore void, and in that respect the charge of the court was erroneous. But can it be said, as plaintiff claims, that it is Immunized against any legal responsibility for situations growing out of the operation of this contract, such as is stated by the court in these requests to charge, by virtue of the Co-operative Agricultural Marketing Act? Suppose it is conceded that this contract is valid at its inception, but suppose further that the parties to it, under authority contained therein, at a subsequent date revise or supplement the contract by fixing prices and marketing conditions, the inevitable tendency of which is to create such a monopoly in the marketing and distribution of milk as to be detrimental to the public good, can it be said that the contract has not become unreasonable and void? We do not think so. It has recently been held by the Supreme Court of the United States in the case of
 
 Nebbia
 
 v.
 
 People of State
 
 
 *173
 

 of New York, supra,
 
 that the Constitution does not grant, nor can any Legislature grant, the liberty to conduct a business in such fashion as to inflict injury upon the public at large, or upon any substantial group of the people. On the other hand this case holds that “price control, like any other form of regulation, is unconstitutional only if arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt, and hence an unnecessary and unwarranted interference with individual liberty.” The test for determining whether a covenant in restraint of trade is reasonable or not is to consider whether the restraint is no greater than is sufficient to afford a fair protection to the interests of the party for whose benefit it is made and at the same time not so large as to interfere with the interests of the public. But this is a question of law for the court, interpreting the contract as it stood at the time this action was brought, or rather at the time the indebtedness was incurred.
 

 There is a further consideration to be given to the question of invalidity of the contract, involving as it does a matter not fully developed in the evidence and not considered in the charge of the court, but which is of importance in the proper determination of the rights of the parties to the suit. The contract as originally entered into contained provisions for additional and supplemental agreements between the parties from time to time, the purpose and effect of which was to change or modify market classifications and prices of milk as between the producers, the dealers and consumers. It is conceivable that while the original contract as entered into between the parties may have been valid, and subsequent modifications and supplemental agreements may have continued to be so for a time, yet at some subsequent period such contract arrangement and set-up may have become invalid because of unreasonableness in its terms, and as a result the defendant would have a right to withdraw
 
 *174
 
 from the contract and refuse to carry it out whenever such invalidity appeared. But since the contract may have been valid at one time and invalid at another because of such unreasonableness, and the promises of the defendant to account and to pay into the pool fund were separate and divisible in form, recovery might be had for such part .of such fund, if any, which accrued upon the contract while valid, as distinguished from the contract while invalid.
 
 Suesskind, d. b. a. Import Sign Co.,
 
 v.
 
 Wilson,
 
 124 Ohio St., 54, 176 N. E., 889;
 
 Widoe
 
 v.
 
 Webb,
 
 20 Ohio St., 431, 5 Am. Rep., 664; and
 
 State, ex rel. Laskey,
 
 v.
 
 Board of Education of
 
 Perrysburg, 35 Ohio St., 519. Consequently, for milk sold to the defendant under the contract' while its terms were reasonable and valid, if there was any such period, the law would permit a recovery to prevent his unjust enrichment, because the sums so owing by him to the plaintiff, if any, under the contract represented indirectly a portion of the purchase price of the milk received by him from the producers.
 

 When, therefore, the court said to the jury, as it did in giving the defendant’s fifth special request to charge, that if the jury ‘ ‘ should also find from a preponderance of the evidence that said contract imposes an unreasonable restraint upon trade, then and in such event said contract is void and nonenforceable, and the mere fact that you may find from the evidence that payments were so made will not obligate the defendant to make any further payments on account thereof,” and when the court further said in its general charge to the jury that “if you find it [the contract] is unreasonable by the preponderance of the evidence, you need go no further and the defendant is entitled to a verdict”, the court failed to take into consideration the possibility that during portions of the term covered by the contract it may have been valid warranting a recovery on the part of the plaintiff, and for that reason there Was error in that respect in the charge
 
 *175
 
 of the court.
 
 Massillon Savings & Loan Co.
 
 v.
 
 Imperial Finance Co.,
 
 114 Ohio St., 523, 151 N. E., 645.
 

 There was injected into the trial of this case a number of minor issues which had little if anything to do with the determination of the legal rights of the parties to this controversy, and the court will not now take the time to discuss them, especially since this case must go back for retrial in accordance with the views herein expressed. Judgments of the Court of Appeals and of the Common Pleas Court are reversed and the cause remanded.
 

 Judgment reversed and cause remanded.
 

 Weygandt, C. J., Carver, Stephenson, Jones and Matthias, JJ., concur.
 

 Williams, J., concurs in the judgment.