[Cite as *In re Adoption of L.J.L.L.*, 2020-Ohio-5502.]

IN THE COURT OF APPEALS
MORGAN COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| IN THE MATTER OF THE ADOPTION | : | |
| OF: L.J.L.L. | : | |
| | : | Case No. 20AP0001 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Morgan County Probate
Court, Case No. 19 PA 0066

JUDGMENT:                                    AFFIRMED

DATE OF JUDGMENT ENTRY:      November 30, 2020

APPEARANCES:

For Plaintiff-Appellant:                    For Defendant-Appellee:

STACY J. JEWELL                          JOHN A. WELLS
9 S. Third St.                                  1 W. Main St.
Newark, OH 43055                        P.O. Box 176
                                                      McConnelsville, OH 43756

*Delaney, J.*

{¶1}   Appellant Biological Father appeals the January 21, 2020 judgment entries of the Morgan County Probate Court, finding the consent of Biological Father is not required and granting the step-parent adoption petition of Appellee Step-Father.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   Biological Father is the father of L.J.L.V. (nka L.J.L.L), a minor child born on September 12, 2011. The child is hereinafter referred to as "L.V." On August 6, 2019, Step-Father filed a step-parent petition for the adoption of L.V. in the Morgan County Probate Court. The petition alleged, pursuant to R.C. 3107.07 (A), that Biological Father's consent was not necessary because he had not more than *de minimis* contact with L.V. for a period of at least one year preceding the filing of the adoption petition. Step-Father married L.V.'s mother on July 7, 2018. Biological Father and Mother were never married.

{¶3}   Biological Father was properly served, obtained legal counsel, and later filed an objection with the trial court on August 19, 2019. Discovery ensued. An adoption home visit was conducted and the report was filed on November 18, 2019.  In addition, letters in support of Step-Father's petition were filed with the trial court.

{¶4}   On January 7, 2020, the adoption hearing was held in the Morgan County Probate Court.  At said hearing, the trial court first heard testimony from Biological Father. Upon direct examination by his legal counsel, Biological Father testified he currently resides in Vermont and is current in his child support payments. (T. 12, Ex. A). Biological Father stated his relationship with Mother ended in November, 2012 and his last contact with L.V. was in December, 2012. (T. at 13, 14). Thereafter, Biological Father testified his substance abuse issues and recovery treatment, which were followed by a period of

homelessness, created concerns for him being a presence in L.V.'s life. (T. 15). Biological Father is a disabled military veteran suffering from post-traumatic stress disorder. He further did not want to jeopardize the good relationship that Mother had with Paternal Grandmother by trying to seek visitation over the past 6 years. (T. 15- 17). During that time, Biological Father had gotten married, had a child, and was attending college. Biological Father testified in May 2019, he sent a letter to Mother to establish contact and/or visitation with L.V. but reaffirmed he had not had contact with L.V. since December, 2012. (Ex. B; T. 21). He sent a second letter by certified mail in July 2019 requesting some sort of contact in August when Biological Father was planning a trip home to Ohio, but the letter was refused on July 27, 2019. (T. 19). Step-Father subsequently filed the petition for step-parent adoption on August 6, 2019. Biological Father acknowledged that Step-Father is an excellent father in L.V.'s life. (T. 21).

{¶5}   Upon cross-examination, Biological Father again conceded he had no physical or verbal contact with L.V. since December, 2012, including the 365 days prior to the filing of the petition for adoption on August 6, 2019. (T. 23-24).

{¶6}   Biological Father rested, and the trial court asked Step-Father's counsel if he intended to call any witnesses. Step-Father's counsel responded "Not on this issue, Your Honor. I think we've satisfied our burden." (T. 25).

{¶7}   The parties made their closing remarks and the trial court took a brief recess to review the exhibits and the law. Thereafter, the trial court resumed the proceedings and ruled orally from the bench that Biological Father's consent for the adoption was not necessary based on the law and facts of this case. The trial court remarked it felt like it had "no choice" on this issue but encouraged the parties to maintain communication

between the biological families.  (T. 30).  The trial court then announced it would recess for ten minutes before the "adoption can proceed." (T. 31).  When the trial court resumed the proceeding, only Step-Father's counsel and his clients were present in the courtroom. (T2. 3, 10).  Step-Father and Mother testified as to their understanding of the legal ramifications of adoption and desire for the adoption to be granted. (T2. 4-10). The trial court ruled orally from the bench that "…it would be in this child's best interest to be adopted" and granted the petition. (T2. 10).

{¶8}  The trial court's rulings were journalized via judgment entries filed on January 21, 2020.  Upon remand by this Court, the trial court issued findings of fact and conclusions of law on October 1, 2020.

{¶9}  Biological Father now appeals, raising the following seven assignments of error:

**ASSIGNMENTS OF ERROR**

{¶10} "I.  THE COURT'S DECISION THAT THE APPELLANT HAD NO JUSTIFIABLE CAUSE FOR HAVING LESS THAN DE MINIMIS CONTACT WITH L.V. FOR THE YEAR IMMEDIATELY PRECEDING THE FILING OF THE ADOPTION PETITION HAS NO MERIT.

{¶11} "II.  THE TRIAL COURT'S DECISION VIOLATES APPELLANT'S CONSTITUTIONAL RIGHTS.

{¶12} "III.  THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} "IV. THE TRIAL COURT ERRORED IN ITS DECISION OF FINDING APPELLANT'S CONSENT WAS NOT REQUIRED FOR THE ADOPTION BECAUSE ITS

DECISION WAS NOT BASED ON CLEAR AND CONVINCING EVIDENCE PUT FORTH BY THE APPELLEE AS LAW REQUIRES. THE TRIAL COURT PUT THE BURDEN OF PROOF ON THE APPELLANT. THE BURDEN WAS ON THE APPELEE TO SHOW WHETHER THE APPELLANT'S CONSENT WAS NECESSARY.

{¶14} "V. THE TRIAL COURT IMPROPERLY PLACED THE BURDEN OF PROOF ON THE APPELLANT TO SHOW THAT JUSTIFIABLE CAUSE WAS PRESENT FOR THE LACK OF COMMUNICATION WITH L.V. THE BURDEN WAS ON THE APPELLEE TO SHOW THERE WAS NO JUSTIFIABLE REASON.

{¶15} "VI. THE TRIAL COURT ABUSED ITS DISCRETION BY THE GRANTING THE ADOPTION.

{¶16} "VII. THE TRIAL COURT ERRORED WHEN IT TOLD THE APPELLANT THAT FOR ALL PRACTICAL PURPOSES IT WAS GRANTING THE ADOPTION PRIOR TO THE BEST INTEREST HEARING."

## LAW AND ANALYSIS

### R.C. 3107.07 and Consent

{¶17} Under R.C. 3107.07(A), Biological Father's consent to the adoption of his child is not required if the probate court finds by clear and convincing evidence that he "has failed without justifiable cause to provide more than de minimis contact with" his child for at least one year immediately preceding the filing of the adoption petition. The probate court must strictly construe R.C. 3107.07(A) in favor of the parent to protect his or her rights as a natural parent. *In re Adoption of Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976).

{¶18} The clear and convincing standard is the highest degree of proof available in civil cases. *Stark Cty. Milk Producers' Assn v. Tabeling,* 129 Ohio St. 159, 171, 194 N.E. 16 (1934). It requires evidence that is sufficient to "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954).

{¶19} The stepparent or petitioner -- who asserts that a parent's consent is not required -- has the burden of proving the applicability of R.C. 3107.07(A). *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985), paragraph four of the syllabus.

{¶20} Even if a parent has completely failed to communicate with his child during the statutory period, his consent to adoption will still be required if there exists justifiable cause for the failure. *Id.* at 367. The burden of proving a lack of justifiable cause remains on the petitioner in the adoption proceedings. *Id.* at 368. Typically, a noncustodial parent has justifiable cause for failing to communicate when the custodial parent significantly interferes with or significantly discourages communication. *Id.* at 367-368.

{¶21} The Supreme Court of Ohio has articulated a two-step analysis for probate courts to employ when applying R.C. 3107.07(A). *In Re Adoption of M.B.,* 131 Ohio St.3d 186, 2012-Ohio-236. The first step involves deciding a factual question, in this case, whether the parent failed to provide more than de minimis contact with the minor for a period of at least one year immediately preceding the filing of the adoption petition. *In Re Adoption of C.N.A.,* 3rd Dist. Shelby No. 17-17-20, 2018-Ohio-897. "A trial court has discretion to make these determinations, and in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision." *Id.* at ¶ 9, citations omitted. In the second step of analysis, if a

probate court finds the parent failed to provide more than de minimis contact, the court then determines 'whether justifiable cause for the failure has been proved by clear and convincing evidence. A probate court's decision on whether justifiable cause exists will not be disturbed on appeal unless the determination is against the manifest weight of the evidence. *Id.* A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279 (1978).

{¶22} The Supreme Court also has held that "[s]ignificant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." *Id.* at paragraph three of the syllabus. A probate court is not restricted to focusing solely on the one-year statutory period in making such a determination. *In re M.G.B.-E*, 12th Dist. Clinton No. CA2016-06-017, 2016-Ohio-7912, ¶ 61; *In re: Adoption of Lauck*, 82 Ohio App.3d 348, 612 N.E.2d 459 (1992).

{¶23} In light of the preceding law, we turn to address Biological Father's assignments of error.

## I.

{¶24} In this first assignment of error, Biological Father challenges the trial court's finding that his lack of contact with L.V. was without justifiable cause. As noted earlier, Biological Father admits that he had not had contact with L.V. since December, 2012 -- almost seven years before the filing of the adoption petition. Therefore, the trial court correctly reasoned the "principal question for the court during the consent portion of the

hearing, therefore, was whether [Biological Father's] lack of contact was justified." Findings of Fact and Conclusions of Law, October 1, 2020, ¶ 11.

{¶25} It is undisputed that Biological Father admitted he was not in a place in his life to have contact with L.V. due to his (1) substance abuse, (2) PTSD diagnosis, and (3) desire not to disrupt Paternal Grandmother's good relationship with Mother. However, he asserts that Mother and Step-Father significantly interfered and significantly discouraged communication by failing to respond to his letters in May and July, 2019. He claims the filing of the adoption petition was a "direct result" of Biological Father sending the letters and is "manipulative, calculated and disingenuous." Appellant's Brief, p. 15.

{¶26} The trial court disagreed, stating:

The Petitioner and his wife, [Mother], have permitted [Biological Father's] mother to be in the child's life and to have frequent contact with her. In fact, testimony indicated that [Biological Father's] mother had visitation the weekend before the adoption hearing. Based upon the frequent contact Petitioner and [Mother] have afforded [Biological Father's] mother, the court finds it is unlikely that Petitioner and [Mother] have interfered, discouraged or prevented [Biological Father] from having contact with the child. The court further finds it commendable that the Petitioner and [Mother] have maintained contact with [Biological Father's] family even when [Biological Father] failed to maintain contact with the child.

Findings of Fact and Conclusions of Law, ¶ 13.

{¶27} Furthermore, the trial court found:

By [Biological Father's] own admission on both direct examination and cross examination, [Biological Father] had not had any contact with the minor child since December, 2012. The last time [Biological Father] had contact with the minor child, the child was only fifteen (15) months old. The child is now eight (8) years old. It is unlikely the child has any recollection of [Biological Father]. [Biological Father] attempted to excuse his failure to have contact with the minor child to his (1) substance abuse, (2) PTSD diagnosis, and (3) desire not to disrupt his mother's good relationship with [Mother]. The finds these excuses, on their fact (sic), to be unpersuasive. Many men suffer from these illnesses, yet maintain healthy and productive relationships with their children.

*Id* at 12.

{¶28} We also observe there is no evidence that Biological Father had any difficulty locating L.V. during his life or made any efforts to communicate with him over the last six years other than the two attempted letters to Mother in 2019. Nor does the record reflect that Biological Father made efforts to establish parenting time through any court proceeding. Furthermore, there is no evidence of a pattern on Mother's part of impeding Biological Father's efforts to reinsert himself into L.V.'s life. To the contrary, Mother had fostered a loving, close relationship with Paternal Grandmother. While it is commendable Biological Father is on a journey of recovery and treatment, we must afford the appropriate deference to the trial court's assessment of credibility. Accordingly, we find sufficient competent, credible evidence to support the finding that Biological Father

failed to provide, without justifiable cause, more than de minimis contact with L.V. in the year preceding the adoption petition.

{¶29} The first assignment of error is overruled.

**II.**

{¶30} In his second assignment of error, Biological Father contends the trial court violated his constitutional right to parent his child. He argues the trial court failed to strictly construe R.C. 3107.07(A) in his favor because he had justifiable cause for having no contact with L.V. due to Mother thwarting his efforts. In addition, he claims the trial court failed to explain the trial procedure and/or the burden of proof upon the parties.

{¶31} Biological Father correctly states the language of R.C. 3107.07(A) must be construed to protect the interest of the non-consenting parent subject to forfeiture of his or her parent rights. However, a probate court, as the trier of fact, determines the weight and credibility of the evidence. We may not substitute our judgment for that of the trier of fact. We have already determined the trial court did not err in determining that Biological Father failed without justifiable cause to provide more than de minimis contact with L.V. to be supported by the record.

{¶32} We further observe that Biological Father was represented by legal counsel of his choosing at the hearing. No objection was made to the manner in which the hearing was conducted nor does the record reflect Biological Father was prohibited from presenting any witnesses or evidence.[1] The findings of fact and conclusions of law written by the trial court were thorough and comprehensive.

---

[1] Biological Father attached his affidavit to the appellant's brief attesting that he was never told by the Judge or his attorney that he was permitted to stay for the best interest portion of the hearing or that it was his burden to prove that the adoption was not in his son's best interest. However, the affidavit is not properly before this Court and is sua sponte stricken from the record.

{¶33} The second assignment of error is overruled.

**III., IV., V., VI. and VII.**

{¶34} In his third, fourth, fifth, sixth and seven assignments of error, Biological Father argues the trial court's decision is against the manifest weight of the evidence and an abuse of discretion.

{¶35} Biological Father essentially challenges the procedural manner in which the trial court conducted the adoption hearing. He asserts the trial court improperly placed the burden of proof upon the non-consenting parent during the consent portion, then granted the adoption petition prior to the best interest hearing and without affording Biological Father his right to present evidence as to the best interest of L.V. during the best interest hearing.

{¶36} The trial court stated in its October 1, 2020, entry as follows:

10. The adoption hearing took place on January 7, 2020. Petitioner was represented by Attorney John A. Wells. [Biological Father] was represented by Attorney K. Robert Toy. Testimony was heard from [Step-Father], the [Mother] and the [Biological Father]. As is the court's custom, the hearing (sic) bifurcated into two parts. The first session being primarily concerning if consent of the biological father was necessary. The second session primarily concerned determining best interest.

* * *

15. At the conclusion of the "consent" portion of the hearing, the court ruled that [Biological Father's] consent was not required for the adoption to be granted. The court then took a brief recess. Upon return from the court's recess, [Biological Father] and his attorney K. Robert Toy were no longer

present. The court then completed the adoption hearing. Both [Step-Father] and the [Mother] testified on direct examination.

{¶37} As stated earlier, the trial court ruled orally from the bench that it was in L.V.'s best interest to be adopted and granted the petition.

{¶38} Biological Father reiterates the trial court granted the adoption prior to the best interest hearing and faults the trial court for not explaining the burden for the best interest hearing or telling Biological Father he was permitted to stay for the best interest hearing.

{¶39} The record reflects the trial court conducted a separate best interest hearing almost immediately after the consent hearing. Such an approach is understandable and logical in light of the two-step analysis to be conducted under R.C. 3107.07.

{¶40} Without citation to any authority, Biological Father argues the trial court should have explained the bifurcated proceeding to him, or the respective burdens of proof upon the parties. Upon review of the transcript and the fact Biological Father was represented by the counsel of his choosing, we can find no prejudicial error committed by the trial court in this regard.

{¶41} We also disagree with Biological Father's characterization and assumption that the trial court granted the adoption at the end of the "consent' portion" when it stated, "I have no choice other than to rule that the consent of the biological father is not necessary for this adoption to proceed, and the law is the law. And this is – this is the adoption law and it is pretty carved in granite, so – but I do hope that his child continues to see Grandma, biological grandma because biological grandma can give him

connection to the future if he needs a kidney transplant or he's got to have something that involves biological people." (T. 30).

{¶42} Biological Father claims that he left the courthouse and did not stay for the best interest hearing because he believed the adoption had been granted by the trial court. Whether or not such an impression was in the mind of Biological Father, the record clearly reflects the trial court took a brief recess after announcing its judgment orally that the consent of Biological Father was not necessary before the "adoption can proceed." (T. 31). The trial court thereafter reconvened and proceeded to the best interest portion of the hearing.

{¶43} The evidence demonstrates the adoption by Step-Father was supported by competent, credible evidence. Biological Father admitted that Mother has fostered a good relationship with his family, and Petitioner "has stepped up to be stepfather." Biological Father further appreciated that Step-Father has instilled in L.V. a desire to be an athlete and someone who hunts and fishes. The home visit report favored the adoption, finding Step-Father and Mother have been a couple since L.V. was two years old and L.V. now has a half-sibling. Mother consented to the adoption and testified she believes that the adoption is in L.V.'s best interest.

{¶44} We find, based on the foregoing, the trial court could conclude Biological Father had failed to maintain more than de minimis contact with L.V. for a period of at least one year immediately preceding the filing of the petition, and such failure was unjustified. We therefore do not find the trial court erred in determining that Biological Father consent to LV.'s adoption was not required and the adoption was in the best interest of L.V.

{¶45} Biological Father's third, fourth, fifth, sixth and seven assignments of error are overruled.

**CONCLUSION**

{¶46} The January 21, 2020 and October 1, 2020, judgment entries of the Morgan County Probate Court are affirmed.

By: Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.