## ORKIN EXTERMINATING CO. INC. OF SOUTH GEORGIA v. DEWBERRY; *et vice versa.*

Nos. 16441, 16453. JANUARY 11, 1949. REHEARING DENIED FEBRUARY 17, 1949.

*Paul Ginsberg,* and *Martin, Snow & Grant,* for plaintiff.

*Edward F. Taylor,* for defendant.

WYATT, Justice. 1. The answer to one question controls this case. Was the employment contract entered into between the parties contrary to public policy?

Among the contracts that are stated to be unenforceable because "against the policy of the law" are "contracts in general restraint of trade." Code, § 20-504. While it is the general rule that a contract in general restraint of trade is void, a contract only in partial restraint may be upheld, "provided the restraint be reasonable," and the contract be valid in other essentials. *Kutash* v. *Gluckman,* 193 *Ga.* 805 (20 S. E. 2d, 128). With respect to a negative covenant ancillary to a contract of employment, it is essential to the validity of the contract that it contain reasonable limitations both as to time and territory, and that it be "not otherwise unreasonable." If limited as to both time and territory, the contract is nevertheless illegal if it be unreasonable in other respects. *Kinney* v. *Scarbrough Co.,* 138 *Ga.* 77 (74 S. E. 772, 40 L. R. A. (N. S.) 473); *National Linen Service Corp.* v. *Clower,* 179 *Ga.* 136, 145 (175 S. E. 460).

Whether the restraints imposed by an employment contract are reasonable is a question of law for determination by the court. *Rakestraw* v. *Lanier,* 104 *Ga.* 188, 194 (30 S. E. 735, 69 Am. St. R. 154); *Hood* v. *Legg,* 160 *Ga.* 620, 625 (128 S. E. 891), and cit. There are certain well-established tests which

control in the determination of whether the limitations are reasonable. "The court will consider the nature and extent of the trade or business, the situation of the parties, and all the other circumstances." *Hood* v. *Legg,* supra; *Rakestraw* v. *Lanier,* supra. To be valid, the covenant in such a contract must be reasonably necessary to protect the interest of the party in whose favor it is imposed, and must not unduly prejudice the interests of the public. The restrictions imposed upon the promisor must not be larger than are necessary for the protection of the promisee. *Rakestraw* v. *Lanier,* supra.

In determining the reasonableness of a restrictive covenant, greater latitude is allowed in those covenants relating to the sale of a business, or dissolution of a partnership, than in those covenants ancillary to an employment contract. This distinction has been expressly recognized by our courts, and seems to accord with the weight of authority from other jurisdictions. 17 C. J. S., 636, § 254, states the general rule: "Restrictive covenants contained in a contract of hiring are tested by the same standard of reasonableness of the restraint as are similar covenants in a contract of sale, but covenants of the former sort are not viewed by the courts with the same indulgence, and a smaller scope of restraint is permitted." In *Rakestraw* v. *Lanier,* supra, the court held: "A clear distinction must be taken between the class of cases binding one who has sold out a mercantile or other kind of business, and the good-will therewith connected, not to again engage in that business within a given territory, and that class of cases binding one to desist from the practice of a learned profession." The same distinction has been made between a contract involving the sale of a business or manufacturing enterprise and a contract of employment. In the former class of cases, the contract may be unlimited as to time and still be valid *(Goodman* v. *Henderson,* 58 *Ga.* 567; *Swanson* v. *Kirby,* 98 *Ga.* 586, 26 S. E. 71), while in the latter case, in order to be valid, the contract must contain a reasonable time limitation. *Rakestraw* v. *Lanier,* supra; *Shirk* v. *Loftis,* 148 *Ga.* 500, 504 (77 S. E. 66); *Kutash* v. *Gluckman,* supra.

Many reasons have been advanced for the broader latitude given to contracts of sale as distinguished from contracts of employment. In *Hood* v. *Legg,* supra, this court, quoting with

approval from 6 R. C. L. 793, § 197, said: "Public policy requires that every man shall be at liberty to work for himself, and shall not be at liberty to deprive himself or the State of his labor, skill, or talent by any contract that he enters into. On the other hand, public policy requires that when a man has by skill, or by any other means, obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market; and in order to enable him to sell it advantageously in the market, it is necessary that he should be able to preclude himself from entering into competition with the purchaser. In such a case, the same public policy that enables him to do this does not restrain him from alienating that which he wants to alienate, and therefore enables him to enter into any stipulation which, in the judgment of the court, is not unreasonable, having regard to the subject-matter of the contract. There are several reasons for upholding a covenant on the part of the vendor in all such cases to desist from the business in competition with the purchaser, which do not obtain in other cases. . . The vendor receives an equivalent for his partial abstention from that business, in the increased price paid him for it on account of his covenant; and his entering into and observance of the covenant not only do not tend to his pauperization to the detriment of the public, but on the contrary, by securing to him the full value of his business and its good will, a value which he has an absolute right to secure in this way, the covenant operates to his affirmative pecuniary benefit and against his impoverishment." These reasons for upholding a covenant in a contract of sale do not obtain in a contract of employment. On the contrary, restrictive covenants in employment contracts "tend to injure the parties making them, diminish their means of procuring livelihoods and a competency for their families; tempt improvident persons, for the sake of present gain, to deprive themselves of the power to make future acquisitions, and expose them to imposition and oppression; tend to deprive the public of the services of men in the employments and capacities in which they may be most useful to the community as well as to themselves." *Rakestraw* v. *Lanier*, supra.

We now come to a consideration of the present contract, in the light of the foregoing rules and tests. It is apparent that

the contract is reasonable as to its time limitation. But is the scope of the territorial limitation reasonably necessary for the protection of the employer's business? The restrictive covenant prohibits the employee from engaging in a competitive employment in named towns, and a 75-mile radius of each town. By reference to a map of the State, it is readily discovered that the territory embraced in the contract covers practically the entire State of Georgia. Excluded therefrom is only extreme North Georgia, extreme South Georgia, and extreme Southeast Georgia. The territory extends far above Atlanta, to the north, including such towns as Cedartown, Cartersville, Canton, Gainesville and Athens. To the south it includes such towns as Albany, Moultrie, Tifton, Douglas, and Jesup. On the western side of the State it includes Columbus and LaGrange and a portion of East Alabama. On the east it includes Augusta and extends practically to Savannah.

The most favorable evidence for the employer on the question of the reasonableness of the territory embraced in the contract is quoted in the statement of facts. Admittedly, the employer does not do business in all of the territory embraced in the contract; but evidence was offered to the effect that the employer anticipated going into all cities of Georgia in the future "when and as conditions permit profitable operations in such·other cities."

Under the preceding rulings, and the circumstances surrounding the contract as disclosed by the evidence, the paramount question for decision is whether a territorial limitation is reasonable which covers practically the entire State, and territory in which a company is conducting no business whatever but hopes and anticipates it will conduct business in the future. We find no previous adjudication of our court directly in point. Decisions from foreign jurisdictions are conflicting, some being to the effect that a territory covering an entire State is not unreasonable and others being to the effect that a territory covering even a city, and not confined to the particular part of the city in which the employee actually worked, is unreasonable. 17 C. J. S., § 254, pp. 637, 638; 9 A. L. R. 1450, 1456; 20 A. L. R. 857, 861; 98 A. L. R. 958, 963. This court has passed many times upon the validity of restrictive covenants. In a majority of cases where

the restrictive covenant has been held valid, the territorial limitation was confined to a town, city, or county. With respect to restrictive covenants in employment contracts, we find one case in which this court held valid a restrictive covenant in which the territorial limitation covered one city and a 50-mile radius thereof (*Ogle* v. *Wright*, 187 *Ga.* 748, 2 S. E. 2d, 72), and another case in which the territorial limitation embraced Fulton and DeKalb counties (*Franco* v. *Fulton Bakery*, 190 *Ga.* 298, 9 S. E. 2d, 240) ; but we have found no case, and none has been cited by counsel, in which this court has held valid an employment contract embracing territorial limitations even approaching in extent the territory embraced in the present contract.

With respect to a restrictive covenant in a contract of sale, this court held in *Hood* v. *Legg*, supra, that such a covenant embracing territorially a city and a 300-mile radius thereof was not unreasonable. But that case involved the sale of a manufacturing plant, where covenants are viewed with more indulgence as to the restraints imposed. In discussing at length the reasons why the court in that case considered the territorial limitation reasonable, the court said: "Some courts hold that to be reasonable the territorial limitation must not be greater than the extent of the business when sold, while others hold that such limitation may extend over the area to which the business may afterwards be extended. . . It seems fair and just, and also conducive to business integrity, that a person who purchases a business including the good will, with the purpose of extending its scope, is entitled to contract with his vendors against competition from them within the territory into which he designs to extend it, and that such a contract is not opposed to public policy when the area which it embraces is not greater than that which the parties may fairly anticipate the extended business will cover. . . The business, in the present instance, is that of manufacturing brick. The plant is situated, not in a large city affording a sufficient market for the present and future products of the plant, but, as this court must know, it is located where there can be no reasonable prospect of a local market sufficient to maintain such a plant as a going concern. . . The business of manufacturing and selling brick in the construction of buildings and walls of various kinds, to be successful, must

command a wide market. Such market, over such a territory, was enjoyed by the brick company before its sale to Hood."

None of the reasons for the extensive territorial scope in the sale of a manufacturing enterprise exist in a contract of employment. In the protection of the employer against the possibility of a former employee's contacting its customers, it is not reasonably necessary that he should be prohibited from working in a territory where the employer has never had customers. Certainly, the inclusion of such territory in a restrictive covenant is broader than reasonably necessary to protect the employer where there is no anticipation of immediately extending the company's business into the prohibited territory, but the anticipation is nothing more than a hope, based upon contingencies, which may or may not occur. Whatever may be the rule with regard to contracts of sale, it is our opinion, in view of the repeated rulings that employment contracts require more limited restraints, that such a broad territorial limitation unduly restricts the employee without any reasonable necessity therefor.

We think that the reasoning of the court in Parish v. Schwartz, 344 Ill. 563 (176 N. E. 757, 78 A. L. R. 1032), is sound and peculiarly applicable to the case under consideration. It was there said: "A contract in restraint of trade is thus total and general, when by it a party binds himself not to carry on his trade or business at all, or not to pursue it within the limits of a particular country or state. . . The effect of the contract . . would be to deprive the public—the people of the whole state— of the industry and skill [of the employee] in the particular trade or business in which he may be most skillful and useful, and compel him to engage in some other business, or move to another state in order to support himself and family; in other words, to expatriate himself, so far as his citizenship of this state extends, and go beyond our jurisdiction. . . It is against the policy of the state that the people of the whole state should be deprived of the industry and skill of a party in an employment useful to the public, and he should be compelled either to engage in other business or abandon his citizenship of the state and remove elsewhere in order to support himself and family. . . Within its own sphere the state has a public policy . . which the courts of the state regard and enforce, distinct from ques-

tions of policy affecting the nation at large. The state regulates its internal affairs, supports those who become public charges, and is interested in the industries of its citizens. It is against the policy of the state that its citizens should not have the privilege of pursuing their lawful occupations at some place within its borders, and that a citizen should be compelled to leave the state to engage in his business and to support himself and family. It is true that a contract may be valid which embraces portions of more than one state. Trade and business are not affected by state lines, and a contract might be good in restraint of trade which embraced, within reasonable limits, parts of different states, but an agreement which applies to the whole state is void, and cannot be enforced."

While the territorial limitation of the present contract does not extend to the entire State, the practical effect is the same. Only a small part of the State is excluded; and to continue in his same line of employment, the employee, for all practical purposes, would have to move beyond the boundaries of the State. The contract is no more reasonable than if it had included the entire State except Rabun's Gap. In any event, it covers territory in which the employer has never engaged in business; and the territorial scope of such a contract is not made more reasonable by the fact that the employer entertains the hope that some day its business may extend to every city within the State. Such a contract is "unreasonable, not necessary for the protection of the party in whose favor the restraint was imposed, oppressive to the party restrained, and opposed to the interests of the public." *Rakestraw* v. *Lanier*, supra. Accordingly, it is contrary to public policy and void.

■ Aside from any consideration of the reasonableness of the contract as to its time and territorial limitations, it is contrary to public policy because it is "otherwise unreasonable" under the particular facts of this case.

It is manifest that the provisions of the Servicemen's Readjustment Act, and regulations adopted by Congress pursuant thereto (38 U. S. Code, 1947 Supp., part 8, p. 177), were intended to furnish to veterans on-the-job training in order to speedily provide for their employment in a gainful occupation, to reduce the problem of unemployment among returning veterans, and

to assure the veterans, provided with on-the-job training, of a reasonable certainty of using that training in a gainful occupation. This law was not intended as a mere dole to veterans. The beneficent purposes of the law were to assure the veteran of gainful employment, and at the same time to relieve the nation from economic problems which might be attendant upon the return of millions of veterans without a job or means of support. It is specifically provided that, in order to qualify as an institution for on-the-job training, an establishment must meet certain criteria, including: "There is reasonable certainty that the job for which the veteran is to be trained is to be available to him at the end of the training period." Manifestly, it was intended that the trainee should be able to make use of his knowledge gained through training by continuing in gainful employment in the work for which he has been trained.

In the present case the veteran applied to, and was accepted by, the employer for on-the-job training. Yet the employer required him to sign a contract, under the terms of which he might be dismissed prior to the completion of his training, with or without cause, with the practical result that he could not continue with the course of training he had pursued, nor continue employment in the trade for which he had been trained, unless he removed himself beyond the borders of the State. The contract forces the trainee, after he has been discharged or resigns, into unemployment, or into another line of endeavor within the State, or, at the least, makes it exceedingly difficult for him to continue his training or the work for which he has been trained, with the result that all public money expended for the purpose of assuring the veteran a gainful occupation has been wasted. Obviously, such a contract tends to defeat the beneficent purposes of the Servicemen's Readjustment Act; and such a contract is calculated to bring about the very results the law seeks to prevent. "Contracts that obviously and directly tend in a marked degree to bring about results that the law seeks to prevent can not be made the ground of a successful suit." Such contracts are "against public policy." *Robinson* v. *Reynolds*, 194 *Ga.* 324 (21 S. E. 2d, 214).

The public policy of this State with reference to the educational benefits to which veterans are entitled by the laws of Congress.

has been expressly declared. By an act of 1947 (Ga. L. 1947, p. 1143, Code, Ann. Supp., § 78-402a), it is provided: "It is hereby declared to be the public policy of the State of Georgia, and the intent of this Chapter, to assist veterans, as hereinafter defined, in securing the educational benefits to which they are entitled under the laws of the United States, and to insure that all moneys coming into the State of Georgia for educational benefits of veterans shall be disbursed solely and wisely for that purpose." It seems needless to state that public money expended in training a veteran, who thereafter may be prohibited from using, or continuing, his training within the State, has not been wisely spent.

For the foregoing reasons, the contract in question is contrary to public policy and unenforceable.

The trial court erred in granting an injunction and in sustaining a demurrer to that portion of the answer which alleged that the contract was void because contrary to public policy. No error is made to appear in other rulings on demurrer.

*Judgment reversed in part, and affirmed in part, on the cross-bill of exceptions. Main bill dismissed. All the Justices concur.*