BRADLEY, Judge.
Woodbury Business Forms and Systems [hereinafter Woodbury] appeals from a final decree denying damages and injunctive relief against Jim Coleman [hereinafter Coleman] and Skinner Printing Company [hereinafter Skinner]. The decree denied Woodbury’s demand for an accounting, and for a return of books, catalogues and customer lists. The trial court found Wood-bury indebted to Coleman for $882 and taxed costs against Woodbury.
The facts are revealed from a deposition, the record, and attached exhibits.
Woodbury, a Georgia corporation, employed Coleman as a manager of its Montgomery branch in December of 1975. Woodbury engages in the business of selling business forms, systems and related products. Woodbury agreed to hire Coleman on a trial basis. Coleman had previously owned his own business which became defunct. Coleman had orders from customers he dealt with in his own business that he was unable to fulfill because of his business’ financial problems. Woodbury agreed to fill the orders for him.
A letter dated December 19, 1975 was sent to Coleman which covered items agreed upon concerning his employment. Among those items was a description of Coleman’s sales territory. The letter was sent to Coleman, signed by him and returned on December 29 1975. Woodbury’s stamp with the date appears on the letter. The letter was also signed by Mr. Shagi-naw, an executive of Woodbury. A part of the letter stated Coleman would be required to sign the salesman’s contract before being placed on the payroll. The salesman’s contract was signed by Coleman. The agreement was post-dated July 1, 1976, at which *347 time it would become effective after a trial period. It provided in pertinent part:
In consideration of the remuneration herein agreed to be paid to the sales representative by the Company, and in consideration, by both parties, of all the terms and conditions stated herein and the Sales Policies of the Company, it is agreed as follows:

7. In part consideration of the remuneration herein agreed to be paid and the Company’s agreement to disclose confidential information from time to time to the sales representative, and in consideration of similar covenants made by other sales representatives of the Company, the sales representative agrees with the Company and with such other factory representatives:
That for a period of twelve months from date of leaving employ of the Company for whatever reason, he will not sell in [competition], direct or indirect, with the Company to the accounts to which he had been assigned as sales representative of the Company. For the purposes of this Section 7 the term “accounts to which he has been assigned as sales representative of the Company” shall be construed to mean any account which the sales representative has called on and to whom the Company has shipped one or more orders during the twelve months immediately preceding the date of his leaving the employ of the Company.
At the time of the signing of the agreement, Woodbury had not been actively soliciting in Alabama, except perhaps in and around the Opelika area.
Coleman brought many of his own accounts to Woodbury. While working for Woodbury, Coleman gained only three or four new accounts.
Coleman resigned from Woodbury officially on February 1, 1978 by a letter. He did not give any formal prior notice.
After Coleman left, Woodbury had problems continuing to service Coleman’s territory. Mr. Shaginaw testified in deposition that Woodbury did not have anyone to replace Coleman. Woodbury tried to keep contact with customers by phone. In April Woodbury hired a new employee who services the territory two or three days a week. There is presently no Montgomery office.
On February 1,1978 Coleman began work as a salesman for Skinner, a corporation with its principal place of business in Alabama. Skinner engages in commercial printing, office supplies, and furniture. Coleman had worked for Skinner before in 1968 and 1969. The owner of Skinner testified Coleman brought accounts with him when he began his employment the first time with Skinner in 1968-69. Further testimony indicates Skinner lost about ninety-nine percent of the accounts when Coleman left the first time.
When Coleman began to work for Skinner, he serviced accounts which he serviced while he was employed with Woodbury. The owner of Skinner testified he thought accounts to whom Coleman now sold for Skinner were accounts Coleman handled while he was employed by Woodbury. Some of the accounts which Coleman now services for Skinner were handled during 1968 and 1969 when Coleman worked for Skinner the first time.
Coleman testified he has not serviced any new accounts which he acquired while working for Woodbury. Coleman testified he had serviced the greatest portion of accounts he now has since 1968. Since he has worked for Skinner, he has picked up a few accounts; however, they were referrals from accounts he already had.
Coleman admits he knew of the contents of the sales contract he signed when he began his employment with Woodbury. He also realized national companies were not enforcing similar contracts because of “public relations.”
In its brief Woodbury says the issues for decision by this court are: (1) whether the provisions of the sales contract between Woodbury and Coleman are valid and enforceable under Georgia law; and (2) whether the trial court erred in refusing to enjoin Coleman from violating the sales *348 contract and Skinner from aiding and abetting in such violation.
We review this case with a presumption in favor of the findings of fact made by the trial court and will not reverse the trial court’s judgment unless we determine it to be plainly and palpably wrong or unless the trial court erroneously applied the law to the facts. Alabama Farm Bureau Mutual Insurance Co. v. Davis, Ala.Civ.App., 354 So.2d 15 (1978); 2A Ala.Dig. Appeal & Error 931(1).
Paragraph thirteen of the sales contract stated that if any question arose concerning the validity of the contract, it was agreed by the parties that Georgia law would govern without reference to the place of execution or performance of the contract. The trial court applied Georgia law. We will review the validity and enforceability of the sales contract by looking also to Georgia law. Evans v. Kittrell, 33 Ala. 449 (1859).
The trial court specifically found paragraph seven of the sales contract invalid and unenforceable because it was in “partial restraint of trade” and unreasonable under the facts of the case. It further found an injunction would result in severe detriment to the defendant Coleman, and this detriment would far exceed any benefit which Woodbury would derive or the interest it has to protect.
We note paragraph seven of the contract is better known as a “restrictive covenant.” Contracts which are in “general restraint” of trade are against public policy and thus void. Ga. Code Ann. § 20-504 (Cum.Supp.1976). Restrictive covenants in employment contracts against competition are considered in “partial restraint” of trade and are more closely scrutinized than covenants relating to the sale of a business. Orkln Exterminating Company of South Georgia v. Dewberry, 204 Ga. 794, 51 S.E.2d 669 (1949). Such covenants will be upheld only if strictly limited in time and territory and if otherwise reasonable considering the business interest of the employer to be protected and the effect on the employee. McNease v. National Motor Club of America, Inc., 238 Ga. 53, 231 S.E.2d 58 (1976).
Whether the restraints imposed by an employment contract are reasonable is a question of law for determination by the court. Orkin, supra.
In brief Woodbury relies principally upon the case of Kirshbaum v. Jones, 206 Ga. 192, 56 S.E.2d 484 (1949), for the proposition that a restrictive covenant against competition need not contain a specific geographical territorial limitation in addition to a prohibition against soliciting customers of the former employer for the new employer.
The restrictive covenant in Kirshbaum did not contain a specific geographic territorial limitation, but did contain a prohibition against “ ‘solicitpng] or attemptpng] to solicit the business or patronage of any of the customers of the employer heretofore served by the employee during his term of employment.’ ”
Although the employment contract was not to be effective until July 1, 1976, it was signed on or about the same time as the letter agreement dated December 19, 1975. The letter agreement set out the territory within which Coleman was to work. Wood-bury takes the position the letter is not part of the employment contract; and therefore the only limitation on geographical territory would be that territory which contained Woodbury’s former customers. This is the same factual situation that existed in Kirshbaum. Accordingly, it would appear that the rule established in Kirshbaum would be controlling in the case at bar. It would, except for a recent Georgia Supreme Court case styled Fuller v. Kolb, 238 Ga. 602, 234 S.E.2d 517 (1977).
In the Fuller case, the employment contract provided that the employee agrees that:
“ ‘[F]or a period of two years subsequent to the termination of this agreement, he not render public accounting services, either as a practitioner, or as an employee of another practitioner, for any organization or individual which was a client of Fuller and DeLoach or of a predecessor firm at the time of termination or which had been a client within a year thereto
*349 The facts in the cited case show that the employee quit his job with Fuller and went into business for himself and, subsequently, performed accounting services for several of appellant’s former clients. There were no specific territorial limitations in the employment contract.
The Georgia Supreme Court said:
The covenant which we are asked to consider in this case, as it is written, has no territorial limitation. The absence of such a limitation renders it void. See Colonial Life & Accident Ins. Co. v. Byrd, 227 Ga. 198,179 S.E.2d 746 (1971); Edwin K. Williams & Co.-East v. Padgett, 226 Ga. 613,176 S.E.2d 800 (1970). The problem inherent in restrictive covenants which do not have territorial limitations is one of notice to the former employee.

Appellant argues that this case should be controlled by Kirshbaum v. Jones, 206 Ga. 192, 56 S.E.2d 484 (1949). In Kirsh-baum, the court upheld a restriction which was written without a territorial limitation. There the court found “[w]ith respect to the territorial limitation, the employee was prohibited from soliciting the employer’s customers whom he had served, and the territory would necessarily be limited to that specific area.” (Emphasis supplied). The opinion in Kirsh-baum does not point out . . . the locality involved in that case. Appellant observes, and we agree, that Kirshbaum is in apparent conflict with later cases such as Colonial Life and Williams, supra. Therefore, Kirshbaum is disapproved insofar as it intimates that a restrictive covenant in an employment contract is enforceable without an explicit territorial limitation.
Applying the rule in Fuller, we find the restrictive covenant void, for it did not contain a specific territorial limitation.
Accepting for argument’s sake, however, Coleman’s argument that the letter agreement setting out the territorial limitations should be construed as being a part of the employment contract because the two were executed contemporaneously and, therefore, that the combined employment agreement does contain a specific territory in addition to a time limitation, Woodbury still could not enforce the covenant to not compete.
The letter agreement provides in part as follows:
TERRITORY
The Montgomery Branch will consist of the following counties: Montgomery, Bullock, Macon, Elmore, Autauga, Dallas, Lowndes, Butler, Crenshaw and Troy. The area outside these counties may be assigned to this branch as the need arises. It is also understood that your present customers in Opelika and Auburn, Alabama (Lee County) will be assigned to this branch. [Emphasis added.]
It should be noted that not only does the letter provide for specific cities and counties in which Coleman was to solicit customers, but it also provided that: “the area outside these counties may be assigned to this branch as the need arises.” This provision in the letter agreement is too broad. It appears to be designed as a catchall and would permit Woodbury to serve areas in which it has only a hope of doing business.
In Orkin, supra, it was held that a provision in an employment contract prohibiting a former employee from soliciting customers of his employer in certain named cities and within a seventy-five mile radius of each of the named cities is broader than reasonably necessary, particularly where the employer has never had customers in the area outside the cities and the extension of the business into those areas rests only on a hope and desire that new business could be generated in those new areas. The Orkin court said such a contract is unreasonable, i. e. it is not necessary for the employer and is oppressive to the employee; consequently, it is contrary to public policy and void.
Likewise, in the case at bar, the letter agreement allowed the employer to extend the territorial limits into areas where it had no customers and had only the hope of obtaining new customers. Such a territori *350 al limitation is contrary to the Orkin rule and is void.
For the reasons above stated, the judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.