**ATLANTA CENTER LIMITED,**
Plaintiff–Appellant,

v.

**HILTON HOTELS CORPORATION,**
Defendant–Appellee.

No. 87–8196.

United States Court of Appeals,
Eleventh Circuit.

June 23, 1988.

Charles E. Campbell, Atlanta, Ga., for plaintiff-appellant.

David M. Brown, Smith, Gambrell & Russell, Elizabeth S. Haley, Atlanta, Ga., for defendant-appellee.

Before TJOFLAT and HATCHETT, Circuit Judges, and LYNNE *, Senior District Judge.

PER CURIAM:

I.

In 1973, Hilton Hotels Corporation entered into a contract with the owners of a hotel in downtown Atlanta, Georgia, where-

* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

by Hilton agreed to manage the hotel for a period of thirty years. The management agreement contained a restrictive covenant prohibiting Hilton from operating other hotels within a ten-mile radius of the downtown hotel. At the time, Hilton was operating a 839–room hotel on a ten-acre site it owned near the Hartsfield International Airport, a commercial airport that is within ten miles of the downtown hotel. The restrictive covenant in the management agreement did not preclude Hilton from continuing to operate that hotel, for it specifically excluded from its coverage "the Hilton Inn located at the Atlanta Airport."

Hilton continues to manage the downtown hotel pursuant to the 1973 management contract and continues to own and operate the hotel property at the airport site. In 1986, it decided that its facilities at the airport site had become obsolete, and proceeded with plans to demolish the existing structure and build an upgraded, 500–room hotel on the same site. As compared to the old structure, the new structure is to offer more amenities and contain more lodging rooms and more space for business meetings.

In December 1986, the present owner of the downtown hotel, Atlanta Center Limited (ACL),[1] filed a complaint in the district court against Hilton, alleging that Hilton's operation of the proposed new hotel at the airport would violate the restrictive covenant in the 1973 management agreement.[2] ACL requested the court to issue an order permanently enjoining Hilton from proceeding with construction of the new hotel. The court convened a bench trial, and, after ACL had put on its evidence, granted Hilton's motion to dismiss ACL's complaint pursuant to Fed.R.Civ.P. 41(b). ACL now appeals.[3]

## II.

The sole issue in this appeal is whether the restrictive covenant in the management contract between ACL and Hilton precludes Hilton from operating the new hotel it proposes to build on its airport property. We affirm the district court's ruling that it does not.

The restrictive covenant at issue reads as follows:

> Hilton agrees that until the expiration or earlier termination of this Agreement, it will not operate a hotel, motel, or inn located within a radius of ten miles from the Hotel [i.e., the downtown hotel], either as owner or lessee, or under a management agreement, or permit its name to be used in connection with any such operation, other than (i) the Hotel (ii) the Hilton Inn located at the Atlanta Airport, and (iii) the hotel to be operated under a Hilton franchise located at 4156 LaVista Road, Tucker, Georgia.

The dispute in this litigation is over the interpretation of the second exception: "the Hilton Inn located at the Atlanta Airport." ACL interprets the exception as applying only to Hilton's airport hotel as it existed in 1973, when the parties entered into the management agreement—that is, as applying only to the building that Hilton demolished in 1986. Thus, in ACL's view, the restrictive covenant precludes Hilton from operating the new hotel it proposes to build on the ten-acre site on which the former structure was situated. In contrast, Hilton interprets the exception as applying to *any* hotel facility it may wish to build on that site. Reduced to its essentials, the dispute is whether clause (ii) in the restrictive covenant excepts a particular *structure* or a particular *site*.

---

1. By virtue of an assignment, ACL has succeeded to the original owner's rights under the management contract.

2. ACL asserted subject matter jurisdiction under 28 U.S.C. § 1332(a) (1982) (diversity of citizenship).

3. After the district court entered its judgment, Hilton moved the court for an award of attor-

ney fees pursuant to Federal Rules of Civil Procedure 11 and 26. The district court has since denied the motion. Thus, we are not presented with a situation where we lack appellate jurisdiction because an outstanding motion for attorney fees deprives the district court's judgment of finality. *See Bank South Leasing, Inc. v. Williams,* 778 F.2d 704, 705 (11th Cir.1985).

The parties do not dispute that Georgia law governs our construction of the restrictive covenant. Under general rules of contract construction, a court's primary task is to ascertain the intent of the parties from the four corners of the document. *See, e.g., McCann v. Glynn Lumber Co.,* 199 Ga. 669, 34 S.E.2d 839, 842–43 (1945). In this regard, ACL argues that the parties, by including the restrictive covenant in the management agreement, obviously intended to lessen the amount of competition which the downtown hotel would have to face. This intent, ACL reasons, stands to be defeated unless the disputed exception to the covenant is given the narrow interpretation it proposes.

 While ACL's argument may have some appeal, it neglects to account for an important principle under Georgia law with regard to the interpretation of contracts not to compete. The state of Georgia has expressed, both in its constitution and in its statutory law, a strong public policy disfavoring contractual restraints on competition and trade. *See* Ga. Const. art. 3, § 6, ¶ 5(c); Ga.Code Ann. § 13–8–2(a)(2) (1982).[4] Georgia courts have repeatedly emphasized that the language of covenants purporting to restrict competition must be construed against the background of this public policy. *See, e.g., Farmer v. Airco, Inc.,* 231 Ga. 847, 204 S.E.2d 580, 581 (1974). Ac-cordingly, when a court is presented with a restrictive covenant that is susceptible of more than one reasonable interpretation, the preferred interpretation is the one that least restricts competition, thereby posing the least affront to the public policy of the state of Georgia. *Cf. Clear–Vu Cable, Inc. v. Town of Trion,* 244 Ga. 790, 262 S.E.2d 73, 75 (1979).[5]

Here, Hilton's interpretation of clause (ii) of the restrictive covenant as a site exception is a reasonable interpretation. It is consistent with the intent of the parties as expressed within the four corners of the document: the language of the exception makes no reference at all to the size of the hotel that Hilton may operate at the airport site, nor does it make any reference to the quality of services that Hilton may offer at that site. Had the parties, who were represented by sophisticated attorneys, wished to put such restrictions on Hilton's operations at the airport site, they could have readily drafted clause (ii) to state those restrictions. Under these circumstances, we would work an injustice to the parties' expressed intent were we to read the restrictions into the contract. Additionally, we would be reaching a result at odds with the strong public policy of the state of Georgia against restraints on competition. Thus, applying general rules of contract construction, as well as the rule of con-

---

**4.** Article 3, section 6, paragraph 5(c) of the Georgia Constitution provides that

[t]he general assembly shall not have the power to authorize any contract or agreement which may have the effect of or which is intended to have the effect of defeating or lessening competition, or encouraging a monopoly, which are hereby declared to be unlawful and void.

Section 13–8–2(a) of the Georgia Code provides that

[a] contract which is against the policy of the law cannot be enforced. Contracts deemed contrary to public policy include ... [c]ontracts in general restraint of trade.

These provisions would seem to render unenforceable *any* contractual restriction of competition. The Georgia courts have not adopted such an extreme view, however. Rather, they have held that the provisions permit the enforcement of "reasonable" restrictions, and have narrowly defined the term "reasonable." *See, e.g., Orkin Exterminating Co. v. Dewberry,* 204 Ga. 794, 51 S.E.2d 669, 675 (1949); *Wedgewood Carpet Mills, Inc. v. Color–Set, Inc.,* 149 Ga.App. 417, 254 S.E.2d 421, 424 (1979).

**5.** The rule that restrictive covenants are to be strictly construed against the covenantee is commonly applied by states sharing Georgia's public policy stance with respect to restraints on trade. *See, e.g., Harvest Ins. Agency, Inc. v. Inter–Ocean Ins. Co.,* 492 N.E.2d 686, 688 (Ind.1986).

Nonetheless, ACL argues that its interpretation should receive the benefit of the doubt because Hilton drafted the disputed language. In support of this argument, ACL cites Ga.Code Ann. § 13–2–2(5) (1982), which states that "[i]f the construction [of a contract] is doubtful, that which goes most strongly against the party executing the instrument ... is generally to be preferred." This rule carries little force where, as here, both parties were represented by sophisticated counsel. *See Trust Co. Bank v. MGM/UA Entertainment Co.,* 593 F.Supp. 580, 586 (N.D.Ga.1984), *aff'd,* 772 F.2d 740 (11th Cir.1985).

struction dictated by the public policy of Georgia, we must reject ACL's interpretation in favor of Hilton's.[6] Accordingly, the district court's ruling is

AFFIRMED.

---

**6.** ACL contends that if the restrictive covenant is susceptible of more than one interpretation, it is ambiguous and therefore should be interpreted consistently with the parol evidence that ACL proffered to the district court. We need not tarry over this argument, for we have reviewed the proffered evidence and have concluded that it does not support ACL's interpretation of the covenant. ACL itself conceded in the brief it submitted to this court that "the parties [to the contract] never discussed whether and to what extent Hilton could rebuild on the old Hilton Inn site."